Mr. Verrilli Good morning and may it please the court, I'm appreciate it if I could take two minutes or so at the outset, summarize our arguments for why Mr. Crawford has satisfied all existing requirements in the law for habeas relief and then why imposing an innocence requirement would not be proper. With respect to his specific arguments, under Strickland's clearly established test for effective assistance of counsel, Crawford's Sixth Amendment, his appellate lawyer forfeited a meritorious 8 v. Oklahoma claim that would have won him a new trial. The Mississippi Supreme Court's unexplained rejection of that claim cannot be defended on the ground that appellate counsel made a strategic choice. The state court record clearly and convincingly disproves any such implicit finding and any such strategic choice would in all events have been unreasonable. The decision cannot be defended on the ground that the 8th claim lacks merit. This case is on all fours with McWilliams. Indeed it's a stronger case than McWilliams and certainly stronger than the losing arguments that appellate counsel did raise. And the decision can't be defended on the ground that the 8th claim was withdrawn by trial counsel. Both the transcript and again unrebutted evidence before the state court unambiguously disprove that theory. Substantial and injurious effect is also clear. Insanity was Crawford's principal defense. Without expert assistance he had no ability to develop it and present it and no ability to rebut the state's expert's testimony challenging. Having satisfied all existing requirements, Crawford may not be denied relief on the ground that he did not prove his factual innocence. The Supreme Court has rejected an innocence requirement many times over the years. Congress has enacted legislation amending the habeas statute to ratify that interpretation, most conspicuously in AEDPA. This court's equitable powers do not give it the authority to impose an innocence requirement that Congress has repeatedly chosen not to impose. Turning if I could to the specific arguments under AIC, we do think that the way this analysis unfolds is that given that this was an unexplained decision by the Mississippi Supreme Court to reject the appellate ineffectiveness claim, the first step is, as the panel recognized, identify the reasonable arguments that could be made in defense of the rejection of the appellate ineffectiveness argument. I've identified in my opening what I think the three are. I'm turning first to the question of whether it's a strategic choice. There is a declaration, sworn testimony, in the state record from Crawford's appellate lawyer that he did not make a strategic decision to forego raising the AIC claim, that it was an oversight, is an oversight that he said he was deeply embarrassed about, that he recognized that he had made a serious mistake when at oral argument before the Mississippi Supreme Court's response they raised that issue. Now, we think to the extent one is trying to defend the Mississippi Supreme Court's rejection of the appellate ineffectiveness argument on the ground that there was a strategic choice, that's an implicit factual finding and that implicit factual finding is refuted by the clear and convincing evidence of that declaration. At this point, I do want to raise a recent decision from a panel of this Court in the Neal case. It was decided on August 23rd. I apologize it's not in our reply brief, but it is relevant and I'd be happy to submit a 28J or provide supplemental briefing if the Court thinks that's warranted, but I do think it's important because on this very question of what effect the appellate lawyer's affidavit should have, if my friends on the other side say it's irrelevant, we think pre-existing case law makes quite clear that it's relevant, but what's important about the Neal case is that that case was an ineffective assistance of counsel claim in which the district court affirmed by the panel rejected the state court's finding that the defense counsel had made a strategic choice to forego certain offenses and arguments and experts. What the panel said in that case was that the affidavit constituted unrebutted evidence that this was not a strategic choice and to the extent that the state court's decision rested on an implicit factual finding, that satisfied 2254E's standard for clear and convincing evidence to show the unreasonableness of that factual finding. So we submit that actually this case is in exactly the same situation with respect to appellate counsel's affidavit. It's unrebutted, it's corroborated, it wasn't a strategic choice. Counsel, what's the . . . if you haven't submitted a 28J, what's the Westlaw site or is it Neal, N-E-I-L? I apologize. All I have is a slip of pen, Your Honor. How do you just spell Neal? It's N-E-A-L and it's case number 2270007. And so it can't be defended on the ground that it was a strategic choice. Second, it can't be defended on the ground that the AIC claim was insubstantial, unmeritorious. I think one needs to just look at the McWilliams decision to understand that this case is on all fours with McWilliams. In fact, it's a stronger case than McWilliams in that in this situation, Mr. Crawford's principal defense was insanity. And as the Supreme Court said in AIC, expert assistance is a virtual necessity to prove an insanity defense. And I think this is a vitally important point and that goes not just to the presentation of an expert to the jury to substantiate the defense, but critically to the consulting role that an expert plays in helping trial counsel assess and develop the evidence and prepare it for trial and lay a predicate through lay witnesses and critically also to cross-examine, to prepare for the cross-examination of the state's expert witnesses. And here, of course, trial counsel knew that the state was going to put on expert witnesses to claim that Mr. Crawford was malingering and he didn't suffer from a mental defect that would establish an insanity defense. So this case really is on all fours. And I think I would point also, if I could, in terms of the substantial and injurious effect under Bract, if one looks at page 1800, this is 137, Supreme Court, 1800 of the McWilliams decision by the Supreme Court, which, and just to remind the Court, what McWilliams said was that, not that it was clearly establishing these principles, but that Ake, in 1984, had clearly established these principles, that with respect to the substantial and injurious effect, the problems were, and this again is at page 1800, that McWilliams didn't have an expert to help the defense counsel evaluate the existing evidence of mental health issues prepared by the government or that McWilliams' medical record translate those data into a legal strategy, wasn't available to help the defense prepare and present arguments that might have explained McWilliams' purported malingering, just like here, was not necessarily inconsistent with mental illness, and no expert to help prepare the cross-examination or testify. Every single one of those things is true in this case as well. Counsel, what's the best case that you have for the proposition that it's not just an unreasonable performance of counsel, but a violation of clearly established law of performance of counsel to fail to raise a defense that's rejected by the first jury? Yeah, so I think that goes to substantial and injurious effect. It might go to both. I mean, it might go to sort of whether it's an effective lawyer, right, to look at a defense that's raised in one trial and then decline to raise it again in the second, but I agree with you, it definitely goes to the second question, which is whether it's harmful. I want to separate out two points because I think they're important to separate out. We're making an argument that telecounsel was ineffective for failing to raise this claim. We have a backup argument that if the court disagrees with that, and it's going to say that trial counsel actually didn't pursue it, then there's a separate argument that trial counsel's ineffective. I'm focusing on the first argument here. That's our principal argument. And with respect to that, it seems to me the question for appellate counsel is, looking at this record, was there an eighth violation? And the eighth violation, we submit, was complete when Mr. Crawford's first lawyer, Fortier, made his request at the first, in front of Judge Lamb, and was denied it. He made the request at the second hearing, in front of Judge Coleman, and was denied it. At that point, everything that needed to happen to make out an eighth violation had happened. And I think the key point is, in terms of the cases that the Your Honor's asked about, I think it's McWilliams. And I think the reason, and it's eighth as well, and McWilliams say, the reason, and this is, I think, bound up in their holdings, the reason one defense lawyer needs an expert is to evaluate the medical evidence, to decide the viability of an insanity defense, to shape the insanity defense, to prepare the predicate-like testimony for the insanity defense, and to cross-examine state's expert witnesses. That's why we say it's on all fours, and so that's why we think, really, I think this comes quite close to being contrary to McMillan, and certainly an unreasonable application of McMillan under the Edgar standard. So I think that's our answer with respect to that. But in both Ake and in McWilliams, there's just the one trial. Right? There's just the one, whereas here, obviously, there's a dry run, if you will. Right? We don't have to wonder what would have happened with the Ake defense. Because I take it that Mr. Crawford, and his various attorneys throughout this entire case, including y'all in the present iteration, don't contend that whatever this hypothetical Ake defense would have looked like at the second trial, it was supposed to be different than the one that was tried in the first trial. Yes, Your Honor. We most certainly do. Quite clearly do. I'm sorry. From the first trial. I understand different from what they did. From the first and the second trial. We quite clearly do. Now, again, I don't think that that's relevant to the fact that there was an Ake violation. It goes to the substantial injurious effect, I think. But with respect to that, I think one thing that's really important to understand, and this is in the record of the assault case, I'm not certain that it's in the record of this case, that there wasn't an Ake-compliant expert in the assault case. The family scraped together enough money to pay Dr. Hudson to testify. We didn't get the full benefit of consultation and preparation for cross-examination. So for that reason alone, it seems to me there's reason to think that the outcome could have been different. But beyond that, and this is important, and we do cite this in our brief, and I think I can give you the record cites here if I may, because I think it's important. There was substantial evidence that emerged that Mr. Crawford was experiencing seizures at the time of and after the assault trial. That is new evidence. It goes directly to the kind of mental health evidence that was being developed that could have been developed to show his insanity at the time of the offense, namely that he had epilepsy, he had brain lesions, he was subject to seizures, and those seizures could render him to be in a position where he couldn't be held legally or morally responsible for his acts. So there's a very substantial difference right there. And the record cites on that are pages, record on appeal 3027 to 30, 3039 and 3041 to 43. So I do think that there is definitely a difference, a substantial difference. Now, the other possible ground, I take it, is that for the unexplained decision of the Mississippi Supreme Court is that that trial counsel, Crawford's trial counsel, withdrew the request for AIC funds. And with respect to that, I think, again, there isn't a basis in the record to substantiate that. Two things that my friends on the other side have pointed to, one is a colloquy with the substitute lawyer, Pennell, and the court where the court asks about the AIC motion, not in this case, in the rape case, but in the assault case, which they have different numbers. And the transcript clearly shows that they're talking about the case denominated with the assault case number. And what Pennell says is that's moot with respect to the assault case. The reason he said it was moot with respect to the assault case is the reason I gave to you earlier, which is the family has scraped together money to pay Dr. Hood for his role as a testifying expert. And we know that he never withdrew it. So that was clearly on the face of the transcript, not a withdrawal. And the other suggestion that my friends on the other side point to is a colloquy in the same hearing where Mr. Pennell is asked by the trial judge, presiding judge, whether he withdraws all motions inconsistent with his current position. It's quite clear. And the court can read the transcript sections for itself. But it's quite clear. I submit absolutely unambiguous that the colloquy was about the fact that the prior counsel, Fortier, had moved to consolidate the assault case and the kidnapping and rape case and then submitted some motions about what kind of evidence should and shouldn't come in with respect to the consolidation. Mr. Verli, over here. Moving just from the case specifics, which are important, to the question of factual innocence, if I were to agree with you that Congress and courts have foreclosed the possibility that there's a factual innocence requirement, what authority would you point to that also forecloses consideration of factual innocence as a discretionary matter? I think that also is foreclosed by AEDPA as a ratification matter, and I'll try to explain why. There's three cases in the 1980s that the court . . . I'm sorry, one case in the 1960s, Kauffman, where Justice Black wrote a dissent making pretty much exactly that argument, that as a discretionary matter, reading the language of 2243, that the court ought to be able to take innocence into account. The majority rejects it. There were two cases in the 1980s, Rose v. Mitchell and Kimmelman, and both of those were situations in which Justice Powell made an argument that in the specific context of that claim, it was a grand jury discrimination claim in Rose, and it was a failure, it was ineffective assistance of counsel for failing to move to suppress evidence in Kimmelman, that innocence should be a requirement in those situations, not across the board, not a flat requirement, but in those situations. And the majority rejected that requirement both times. And the reason I point to AEDPA, it's not just kind of a formal ratification argument with respect to AEDPA, but this question of whether there should be a factual innocence requirement, and if so, how it should be, was debated in Congress in the run-up to the passage of AEDPA. And there were competing thoughts about, you know, there was a group that thought there should be an innocence requirement, there was a group that thought that there should be requirements that if you had a full and fair adjudication in state court, that's it, no federal habeas. But Congress made a different choice. It changed the habeas process and the habeas statute to make claims more difficult for petitioners to succeed at through a number of ways. The deferential standard of review with respect to law in subsection D and with respect to fact in subsection E, the one-year statute of limitations, the extensive restrictions on successor petitions. But what Congress did was strike a balance in that statute. And if I may, Your Honor, Congress recognized the importance of the state interest in comedy in the finality and it pushed them forward. But it also recognized the importance of protecting through the federal habeas mechanism the fundamental trial rights of the defendant to ensure that life and liberty is deprived only by a constitutionally reliable process. Okay. If I could just continue, and that's very helpful. So the argument then is fine, Congress knows how to put factual innocence in and didn't hear, you're right, so there's silence. But the response seems to be there's a traditional equitable authority to it. And that's imported into the 2021 phrase law and justice. So I'd love to hear your thoughts on 2021, that pair of decisions. But am I right or am I wrong that what the court probably meant with that phrase was habeas remedial power as opposed to a new standard to evaluate a substantive claim? Yes, I do think that's right. And if I could make some further points in response to Your Honor's question. One being that the Supreme Court concluded in Rose and Kimmelman and Kaufman in the modern era, cases that were before Congress when it enacted AEDPA, that neither the text nor the existing equitable discretion that accompanied the exercise of habeas jurisdiction justified an innocence requirement. That was the decision Congress made. So against that backdrop, I think the only way you could read that language, the only way you could find that an innocence requirement is compatible either with the statutory text or the history of equitable discretion is if Congress had said so. And in fact, Congress did the opposite, it ratified. Now with respect to the language in Davenport and Chin, I know my friends on the other side have focused on that. If I could just take a minute with respect to that language, a couple of points to make about Davenport and Chin. And then I think there are a couple of other fundamental points to make about Your Honor's question, which I hope I'll get a chance to make. Now with respect to what Davenport said, Davenport does go through, you know, first of all, just to make the holding of Davenport, of course, was a matter of statutory interpretation. Does the 2254G presumption of correctness apply? The answer, of course, is yes, in addition to Brecht. So that's what the holding of the case was. There was language in the case that my friends on the other side pointed to. And, you know, I don't want to belabor this, but I do think it's actually worth reading the paragraph that contains that language in Davenport because I think it's quite illuminating. But the paragraph says that Congress did not wash away everything that came before. While AEDPA announced certain new conditions to relief, it did not guarantee relief upon their satisfaction. Instead, Congress left intact the equitable discretion traditionally invested in the federal courts by preexisting habeas statutes. Now, as I've tried to be clear, that does not include imposing an innocence requirement because the Supreme Court expressly rejected either the text or the equitable discretion that existed could accommodate an innocence requirement. So even a petitioner who prevails under AEDPA must still today persuade a federal court that law and justice require relief. This is the key sentence. Whatever else those inquiries involved, they continue to require federal courts to apply this court's precedents governing the appropriate exercise of equitable jurisdiction, including Brecht. So what he's saying is that AEDPA didn't extinguish the preexisting equitable requirements that surrounded the exercise of habeas. They continue to apply Brecht being one of them. It doesn't say that courts can go forth and decide whatever they want under their equitable discretion. And with respect to this change, in particular, in addition to the fact that the Supreme Court has rejected it as often as it has, I want to go back to something that Your Honor started with, which is the question of whether this could be done as a discretionary matter on a case-by-case basis. I would submit to the court that that is an extremely troubling idea because what that would do is invite totality of the circumstances, case-by-case, ad hoc adjudication, in which individual judges would decide, well, this offense is too serious or this constitutional violation is not serious enough or the balance goes this way or the balance goes that way. It's just an invitation to unprincipled results. And I would strongly urge the court to refrain. While you still have a couple of minutes, what about the infectious assistance of trial counsel claim? It seems to me that, if I'm wrong about the record, that trial counsel was operating under the misapprehension that he would be required to accept the state mental health experts that the court had engaged. And he didn't pursue a request for separate independent experts because of that misconception. Is that correct? Yes, that's 100 percent what trial counsel said in the declaration, which was in the state record, which was unrebutted, and I think under the Neal analysis I described earlier would constitute clear and convincing evidence that would overcome any implicit factual finding that trial counsel . . . Well, are you still maintaining ineffective assistance of trial counsel? Your Honor, I just want to clarify and appreciate the question. I think it is important to clarify, and I tried earlier. I apologize. I obviously wasn't clear enough. That's a backup argument on our part. Our view is that . . . our principal argument is that appellate counsel was ineffective under clearly established law and that, as a result of that, the AIC claim, AIC v. Oklahoma, is . . . Well, but my point . . . I guess my concern is that had counsel raised on direct appeal the denial of the AIC claim, wouldn't the state have said, well, trial counsel never pursued it? He didn't object for the . . . he didn't ask for continuance. He didn't say, I'm putting . . . I can only put on lay witnesses and I'm entitled to put on my independent expert. He didn't protect the record. I mean, isn't that a concern? I don't think so, Your Honor, because I think the record was already protected and perfected with respect to the AIC claim with the request for funds made by the first trial counsel. And if I could, I realize I'm going to probably go a little over my time here answering it, but if I could, I think it would be useful to do that. Now, initial trial counsel makes a motion for funds, puts in a declaration from Dr. Hutt, which I think satisfies the threshold showing . . . says you need to make to show that insanity could genuinely be an issue. Trial judge says, I'm not going to grant that motion for funds for an independent expert to help you at this juncture because I'm going to send him for an evaluation at a state hospital. And then, and this is at page 2074 of the Record on Appeal, the very end of that colloquy, the judge basically says, I only grant funds in exceptional cases and I need an expert to tell . . . a state's expert to tell me one way or another whether Mr. Crawford is insane. The violation of AIC is complete and the record is made at that point. Now, if . . . but it happens again. Once the case is transferred to Judge Coleman, there's another colloquy and with respect to that colloquy, the key language occurs at page 209 . . . I apologize, 209.6 of the Record on Appeal. With respect to that colloquy, 14A again says, you know, I'm entitled under AIC to funds for an expert to help me and that the state's expert isn't . . . doesn't satisfy . . . sending him for a state evaluation doesn't satisfy. And then the court says, I don't think we've reached that point. This court nor Judge Lamb has anything before it other than the motion of the defendant for psychiatric examination. Of course, that's wrong because the motion was accompanied by a declaration. It really means that AIC's threshold is showing. And then here's the key language, it seems to me. If the court determines that he, Crawford, is in fact, has some mental deficiency or whatever, then at that point in time, the court's going to have to address the issue of whether or not you're entitled to have your expert. So he clearly conditions the granting of funds for . . . that AIC provides for on the court determining . . . and this is after the state's . . . the state physician, psychiatrist does the evaluation. The court determining that Mr. Crawford is insane and therefore, he should be able to get these funds. Now, I do want to just . . . at the risk of pushing a little bit further even. I think McWilliams is directly relevant here because in McWilliams, of course, the defendant was sent for evaluations by a state expert, a state psychiatrist. And they came back with a report that he was not suffering from any mental illness and in fact, he was a malingerer. And then the court said despite that, he's entitled to his funds. And so what the court is holding in McWilliams is that the defendant's entitlement to these funds cannot be made dependent on a state psychiatrist concluding an evaluation. Once the defendant has made a threshold showing, it can't be made contingent on a state psychiatrist concluding that the defendant is insane. It can't be made conditional on that. Both Judge Lamb in the first hearing and Judge Coleman in the second hearing made it conditional on both times. And the AIC violation occurred then and was complete then and the record was perfected then. Everything one needs to know to see was completely correct on the record. And then what Mr. Pinell said in the affidavit which is in the state post-conviction proceeding is essentially . . . he didn't use these words in his affidavit, but essentially he said, well, I read the transcript like everybody else. The judges rejected the claim unless the state experts said he was insane. The state experts came back and said he wasn't insane, he was a malingerer. So I knew based on the court's prior rulings that I wasn't going to get these funds. So I don't think there's any obligation on his part to do anything else to preserve the issue of the defendant. Thank you. May it please the court, Justin Matheny for the Appellees. For two reasons, this court should affirm the judgment dismissing Petitioner's habeas claims targeting his three decades old rape conviction. First, his ineffective assistance claims fail under Strickland v. Washington and particularly so under 2254D's heightened standard. As the Mississippi Supreme Court did and as the district court and the panel in this case confirmed, reasonable jurists could determine that Petitioner's appellate lawyer didn't violate the Constitution by omitting an unpreserved and meritless expert funding issue on direct appeal. And Petitioner's backup argument attacking his trial lawyer's strategic decisions also fail under doubly deferential review. They're belied by the state court record and the state post-conviction record curated by his lawyers over twenty years after his rape conviction. Second, and independently, this court can and should conclude that law and justice do not compel awarding Petitioner the equitable remedy of habeas relief. Federal courts can and have adjusted the scope of habeas since the founding and recent Supreme Court precedents show that in an instance like this, Petitioner must clear 2254D, judicially crafted equitable doctrines, and further persuade this court that law and justice require granting habeas. But he's made no such showing. He's omitted no new evidence that he did not rape his victim. Just to be clear, your position is that even if a state court makes a ruling on the merits, not a procedural default issue, that requirement of innocence can be imposed by, as an equitable matter, by a court? Yes, that's our position. I'd like to go straight to the merits of the ineffective assistance. But is it first your position that we don't need to get into that at all? Yes, Your Honor. In this case, I will say, and this is the way we set it up in our briefs, it makes most sense to me to do AEDPA first. And getting to that, there's three key things that undercut everything that my friends on the other side just presented. The first thing is this issue of whether or not the, we'll call it the AK claim, was preserved or not. It was not, and there was no AK violation. The trial court never denied a request for expert funding. When you go through the record, you can see the first time that it came up in April of 1992, there was argument from both sides about whether or not . . . There was argument from the defense about whether or not an expert funding would be awarded. There was argument by the prosecution about whether or not the state's experts would be able to take a look at it. And the trial court didn't do either one of those things. The trial court needed a preliminary report, so instead of granting or denying either motion, he sent a petitioner to the local mental health facility, Timber Hills, for a preliminary report. It's very clear in the record that there was no denial, and it's very clear that petitioner's counsel had the right to come back and ask for funding after the preliminary report. Then you move forward, the next time that it comes up in September of 1992, the court finds out the local mental health facility didn't have a psychiatrist examine petitioner. It was a social worker that examined the petitioner, and that didn't comply with the court's order to provide the preliminary report. There was still argument from both sides about the expert funding and whether or not he should be sent to the state hospital. At that point in time, the court sent the petitioner to the state hospital, but again, after that ruling confirmed that he could come back and ask for expert funding again. And even when you look at the written order that was entered after the September 92 hearing, you can look at the written order and see that his expert funding issue was not denied. Then that's when the most important things, I think, started happening. Everything changed after the state hospital did its report in December 1992. While petitioner was out on bond in January of 93, he committed . . . he kidnapped, raped, and murdered Christy Ray. That immediately triggered several things. First off, he had to be evaluated for competency, and then most importantly, his first attorney withdrew at that point. After that withdrawal and his new counsel comes in, he shifts and changes strategy. The only other time that expert funding issues were brought up, and my friends on the other side mentioned this, but at the March 1993 hearings, petitioner's counsel brought up the issue of expert funding and said that it was moot as to the assault case that was going to be tried first. Then there was an explanation back and forth about whether or not the cases would be consolidated. The trial judge asked if he was going to withdraw all of his motions that were inconsistent with the positions that he's taking. He said, yes, that's right. All of the sequence of events is set forth in the record. All of the sequence of events is set forth in our brief. Here's another key thing about all of this. After that, even if that wasn't a withdrawal of the expert funding issue at that point, counsel never raised the issue again before the rape trial. Either way, whether it was a withdrawn motion, whether it was abandoned, it certainly was not an issue that was perfected to be able to raise on. It seems odd to me, and this is what I'm struggling with somewhat. He did argue insanity. He went forward with an insanity defense and wasn't it submitted to the jury? That's correct. Every lawyer knows that lay testimony isn't going to get you there. The jury was instructed that he didn't have to have expert testimony. We're talking about trial counsel's decision. Yes. The point there is, and cases like Richter make this clear, you don't have to have an expert in order to prove a case. It may not always be the best strategy to do it. By making that strategic choice, he was able to do things like preventing an expert for his side from being cross-examined. He was able to, quite frankly, the type of crime that was at issue, that it was a rape conviction, he was able to put on proof through his mother and his ex-wife and have them testify. The key thing is, perhaps overlaying all of that, and this was what makes this case unlike really any other cases, you have a sequence of trials. He tried the case with an expert on insanity, on assault first. Then, he tried the rape case without an expert on assault and tried to do it with a defense, a factual defense. The key thing is, he tried it with Hutt the first time and it didn't work. When he didn't try the same thing over again, that strategic choice was certainly reasonable. You can look at the outcome of the two cases and see that his defense and his approach to the rape trial was partially successful where it wasn't with respect to the assault trial. Then, furthermore, you're also talking about this is not just two trials and two different periods of time. The assault and the rape happened around the same time. They were part of the same sequence of events. Whether or not he was insane at the time of the assault or whether or not he was insane at the time of the rape that took place contemporaneously . . . Again, I want to make sure I understand the record. In the assault case, was it Dr. Nutt that testified? Dr. Hutt. Hutt. He said, I don't know enough about neurological. He needs a separate neurological exam. There was a discussion with the trial court, I thought, that his grandfather has been footing the bill. He's out of money. He doesn't have any more money. It's just not all that clear to me that he strategically said, after he's been told no, no, no, until the state's experts tells me he's insane, you're not going to get money for an expert in the rape case. Working back from that, the court never said that you're not going to get funding until the state's experts say insane. That's just an inference upon an inference drawn from the record. The trial court never said you're going to get money. Never said you weren't, never said you weren't. I think that the key thing about Hutt is Hutt said in his affidavit on March 17th, 1993, which was right before the assault trial. It was submitted for purposes of assessing competency before the assault trial. He suggested that there needed to be EEG testing to determine whether or not there was organic brain damage. He acknowledged that EEG testing had already been performed and that EEG testing is in the record and it shows that his EEG was normal. There are also normal CT scans and EEGs from around the time. Hutt's suggestion that there needed to be more investigation about organic brain damage, what was causing the epilepsy, the evidence, the objective evidence is in the record that would show counsel that that didn't need to be done. I think that that's the point with respect to Hutt and Hutt's trial . . . I'm sorry, Hutt's affidavit that was submitted in conjunction with the assault trial. Since we're talking about the trial court and effectiveness point, that affidavit that was refuted by the objective testing is the only thing that my suggestion is that there needed to be more investigation into issues about organic brain damage or seizures that might possibly present, not an insanity theory, but a different insanity theory than what was presented at the assault trial by Hutt and what his insanity theory with the lay testimony was at the rape trial. All of the other things that they point to, affidavits from Webb which are when he communicated with any attorneys about needing to test for organic brain damage. Medical and jail records that my friends on the other side pointed out that show there were seizures around the time of the trials. Well, the medical records, East Mississippi Hospital records and the Memphis Mental Health records which centered around institutional visits around the time of the crimes in 1991 showed that he was malingering issues and that he was faking issues in order to be able to avoid jail. Counsel, I'm still struggling a little with what I think of as the much more consequential overarching legal question. Am I right if we don't allow the writ to be used to substitute for direct review of guilt? I'm looking for the authority that stands for the opposite, that the petitioner actually has to negate guilt, has to show factual innocence. It's not in the statute. My question is what case would you point to, American or English history, that stands for the proposition that federal habeas courts can deny a writ unless the petitioner can show factual innocence? What case? I can't point to a case. What I can point to is this and on the law and justice area, it's this. Did you first have to look at Shannon Davenport and there is . . . the law and justice requirement that's in the statute is something that . . . I mean it's suggested in Davenport but then it just says so in Shen that in order to be able to get relief, you have to be able to satisfy AEDPA. You have to be able to satisfy the court's equitable doctrines and you have to persuade the court that law and justice requires granting the relief. The question in, I think, the state's position . . . Doesn't law and justice require things like you're entitled to an attorney even if you did the crime? If you didn't get an attorney, isn't that something that ought to receive a habeas if it didn't win on appeal? I think that what goes to there is the point that we made in our briefing is we're not saying that you always should have to apply a factual innocence requirement as part of law and justice in every single case. What we're saying is in this case, what makes sense is a factual innocence requirement that will assure the court that he has been able to satisfy . . . if he's able to clear the other test, that he's able to satisfy the law and justice requirement for relief. Perhaps it raises the question this way, why factual innocence? I know friends on the other side say that factual innocence has been ruled out by prior decisions before. I think what they're talking about is the cases that considered factual innocence in conjunction with whether or not to categorically get rid of or not allow Fourth Amendment claims to be brought in the Kauffman, the Snickloth, and then what eventually resulted in Stone v. Powell. I think that this is different than that though because what we're talking about here is we're talking about the Supreme Court has pointed out that the statutes and the way that the statutes operate, you don't ever . . . you have the power to grant habeas relief, but it doesn't ever require it. It's a may. What principles can you discern that would guide courts so that when they exercise law and justice analyses, we know that in this category of cases, it should apply, this category it shouldn't, or case by case? How do we apply on a principle basis that notion case by case? We don't think that you have to answer that, but one place that you can look for that is, and this was cited in the panel opinion, and this is something that's been cited in opinions of this court and Supreme Court opinions, but Judge Friendly's article. Here's, I think, where you would draw the line, the basic thing that you're talking about. In cases that involve ordinary constitutional violations, cases that can be subject or where the violations can be subject to harmless error review, cases where . . . frankly, ineffective assistance cases, cases that involve a violation, there's facts that you can look at and determine whether or not it had an effect on the verdict. Ordinary constitutional violations versus what might be considered fundamental violations. Things like complete denial of counsel. Again, in the ineffective assistance . . . You're saying where you go through a harmless error analysis, you should also use law and justice, but not in cases of structural error? I think that that's one way that you could start to sketch out the rule, and that's the way that I appreciate Judge Friendly's article. Well, here's my problem with that, and tell me where I'm wrong. In the . . . Justice Gorsuch went through the whole history of Crawford, Brecht. You must apply a Brecht analysis and an Edpa analysis in order to get relief. Why would he have done that if there's a cut-through argument? Well, first look at law and justice, because under Crawford, which is still the law as I understand it in the state courts, in the direct appeals, if there's constitutional error, then the burden switches to the prosecutor to show, beyond a reasonable doubt, that that constitutional error was not harmful. Then on the habeas side, Brecht says, well, then you have the overlay that every reasonable justice must agree that the prosecution didn't prove that case. Isn't that what Justice Gorsuch discussed in the same breadth of law and justice? That's what the issue that was . . . It seems to me totally inconsistent that you could have a Brecht finding that there . . . yes, if you prevail on Brecht, it seems to me totally inconsistent that you could have an actual innocence finding. I don't understand that at all. I think that the panel decision explained that there is a difference between whether you're doing a prejudicial error analysis and a factual innocence analysis. What I was describing earlier and really when you're talking about classifying the types of cases that would make sense to apply a factual innocence analysis, what I was trying to do was to draw a line that would separate whether you want to call it structural error, fundamental error, something that shows the difference like in the ineffective assistance of counsel circumstance, the difference between something that you subject to a judgment versus something that's subject to a chronic claim. Something . . . Okay, so tell me in which of those two cases you apply law and justice? It would be the regular ineffective assistance. But you're saying . . . but that's almost all the cases. We rarely get structural error cases. So you're saying in every run of the mill, harmless error case, the judge has at his or her discretion whether to decide whether to grant habeas relief and what guides each judge in making that decision? What guides a judge is that law and justice is an additional requirement. You must persuade the court . . . What does that mean? That's part of the reason that the issue is raised here. It has to mean something and we think . . . So does it mean actual innocence in every case where you're balancing harmful error or not? Well, yes. I think it would have to go in both. So then how do you decide which cases you're going to grant habeas based on law and justice and which cases you're not? This is in our brief where we suggest that you have to have a standard. It doesn't matter here because . . . Why not? What is the standard that guides? We've got to know what the standard is, don't we? Right. If your petitioner has put forth no proof of factual innocence, a guiding standard that we submitted in our brief that the most apt analogy would be the standard of innocence that applies in a miscarriage of justice exception situation. New evidence that had not been previously offered that would be able to satisfy the miscarriage of justice exception in order to be able to overcome the default. I think while some of this . . . Well, Congress put that into AEDPA on procedure default, but they did not import actual innocence into merits-based rulings at all. That's true. They put that into AEDPA there, but they also included a statute of limitations and didn't put anything about an exception into that, but yet in the Quiggin, the court read the statutory exception in . . . I'm sorry, read the miscarriage of justice exception in. The point would be this, and this goes to whether or not AEDPA forecloses this law and justice. The statutes have been the same. The law and justice requirement have been there before and after. Just tell me what principles . . . You just have wholly unfettered discretion. What guidance can you give to how a court should exercise its discretion in applying law and justice to deny habeas relief where AEDPA standards have been met and Brecht has been met? The guiding principle and simply what we're asking to do here, we're saying it's not necessary but it's an independent reason that his has to mean something. Factual innocence is a way to shape and define what that means, having to make a showing of factual innocence using, for example, the miscarriage of . . . You would say that applies in every case where the defendant has satisfied Brecht and has satisfied AEDPA. You still look in every case at factual innocence. Yes, and I think that that's consistent with what Davenport and specifically Shen said, the way the mode of analysis works. Mr. Metheny, what do you make of the fact . . . law and justice is a phrase that several of the briefs pointed out that's been around since the first codified habeas federal statute, 1874. The language was the court or a judge in a summary way will determine the facts of the case by hearing the testimony and deciding the dispute as law and justice require. So that's been around for 150 almost years. The Supreme Court used it. It's been in . . . It's obviously in one of the habeas, one of the after statutes. But it's been around without any of this baggage on it that you interpret in the panel. Baggage is the wrong word, but this force that you give to it has never been given to it before. You can read Davenport and Shen versus Ramirez, perhaps, in the way that you interpret. But I'm asking you how do you weigh the impact that this is not new language, this is ancient language, it's the original language, and all of a sudden it means what you say it means. So what I'm asking for is give me some way to overcome that this is really a very old phrase that has never meant this before. I think that the way to overcome that is I think that you have to look at not just the discussion specifically on the point in Davenport and Ramirez, but you look at the history of habeas in and of itself. And a point would be that when you're talking about the original statute, of course, there wasn't much put into the law and justice. Of course, there was no innocence inquiry, these sort of things. Because all the court was looking at was whether or not there was . . . whether the convicting court had jurisdiction over the cause. Nothing else was relevant. There was nothing else that needed to be looked at at that time. Then as you see over time, the gradual expansion of the types of cases that you could obtain relief in habeas on, all the way leading up past the gradual expansion to what some people may think of as the revolutionary decision in Brown v. Allen that just opened everything up and did away with any kind of registrative kind of deference to the state court. But that arc of history, I think, demonstrates and I think it demonstrates to . . . My point in Shen and Davenport is that it was a question that wasn't necessarily . . . and it was not relevant to be asked in the distant past. Then once you get past Brown v. Allen, you see that the court has the authority to narrow and expand the scope of habeas and has filled in the gaps of the statute. This is just the next step, I think. Why would a court ever look at AETPA again? I mean, if the court can decide, like you said, if you're at the opening of your argument, we should look at this first because it's a cut-through argument. Why should a district court, habeas court, appellate court ever look at anything other than law and justice? Why go through the motions of deciding AETPA, deciding Breck? You may not have to because it would not be a requirement that you . . . Why aren't we doing that? That's what you think Congress intended for courts to do in habeas cases is to begin with law and justice and if they decide law and justice is not for you, son, you don't have to look at AETPA. I don't think that there's anything in the structure, the text, or the history that rules out doing that and certainly not after . . . Let me make sure what your answer. Doing that meaning just starting with law and justice and ending with law and justice? Is that what you mean by doing that? You could. Okay. Just want to make it clear. If the petitioner . . . and this is why law and justice, why a factual innocence requirement, why some other way to be able to fill in the gap of the statute is so imperative. If you're able to look at or if you have to be able to satisfy AETPA, equitable doctrines, or law and justice and you have to be able to run the table on all three of those in order to obtain habeas relief, but there's no showing that law and justice would require relief at all. Yes, you can look at it first. Yes, it would be a dynamic. Yes, this would be different than the way things have operated in the past, but Davenport and Ramirez are two landmark Supreme Court decisions that point towards reconsidering . . . Why have we spent all these years litigating death penalty cases and why has the Supreme Court been so meticulous about all these death penalty cases that they should have looked at the outset law and justice before we ever get to AETPA, before we ever get to prejudice? I think the answer to that and not to go with parsing and saying whether or not you're looking at sentences or convictions, which sentences would be . . . Sentencing habeas would be something different under a factual innocence law and justice requirement. I think that the answer to that is Brown and Ramirez, they've pointed out that these requirements are out there. They're in the statutes. There's a gap that's there. The court fills gaps in statutes. It has in the past. The best way to tell lower courts how are petitioners supposed to satisfy without law and justice, the best way to fill in that gap is with a factual innocence argument, with a factual innocence show. Before I would run out of time and because there has been a lot of discussion on the law and justice, I would say this. Our briefing rebuts all of the points that were raised on the AETPA, that were raised here at argument and all the points in the brief. I did want to quickly say that McWilliams is not on all fours with petitioners in effective assistance claim. McWilliams did not involve a procedural default situation. McWilliams involved the court denying access to an expert and forcing the sentencing hearing to occur two hours after the denial. I would also point out that all of these 22D arguments about fact-finding and clear showing, those are all new. Those were raised for the first time today. I don't think that it matters. I think that the proper mode of analysis for the ineffective assistance claim is set forth in our brief. It's the usual way that you analyze an unreasonable state court. Thank you. Unless there's other questions, I would say for the reasons that set forth in our brief, we ask that you affirm. Mr. Verrilli, I have a question. I apologize for disrupting your argument earlier. I was coughing my way through some of it. I had a question and I want to ask it now. Taken just damn important, forgetting Shin versus Ramirez for your answer, putting aside factual innocence as a possible answer to my question, how do you interpret, I shouldn't put Shin versus Ramirez aside, how do you interpret those two cases? Certainly, you have to satisfy Brecht to get relief.  I know you don't like the answer that the panel came up with, but there does seem to be something more than just satisfying Epstein Brecht. Do you agree with that and is your opposition to how far the panel went? A couple of things. I want to focus on Davenport. I read what I think is the relevant paragraph and I just respectfully disagree. I think what that paragraph says is that it's not enough to satisfy AEDPA. You also have to satisfy the equitable doctrines that have grown up and that AEDPA didn't change. So that's your position, that all the talk of equity is really talking about procedural waiver and whatever else. That's the whole package. That's what I think Davenport says in that paragraph. I mean, the court obviously can read that paragraph. So what is law and justice? Is just the anchor for these equitable considerations that have already been identified? Judge Higginson raised one historic interpretation of it which is that it's there to give the court the power to shape appropriate relief. Release from custody isn't always the appropriate relief depending on the nature of the claim brought, you know, other things like that. But whatever else is the case, when what we're talking about is something so novel. I mean, this would be the first case in American history, maybe Anglo-American history, in which a court would ever conclude that in order to get habeas relief, one has to establish factual innocence. And the sweeping nature of that and the fundamental change of the balance that Congress struck in AEDPA, whatever else is true, this is a bridge too far. Now, a couple of other points with respect to the innocence argument and then I've got some of the case specific points if I could. One goes back to the foundational cases from immediately after the habeas statute was enacted to cover state prisoners after the Civil War that you have Lange, you have Medley. In both of those cases, the Supreme Court said the defendant is guilty. In Lange, it was a double jeopardy case. He said, yeah, this defendant is guilty, but because of the double jeopardy violation, he gets relief. In Medley, the Supreme Court said this defendant is undeniably guilty of the murder for which he was charged, but it was an ex post facto violation. So it's as clear, absolutely clear as a bell in those cases that the court said, yeah, guilty, but gets relief. Now, with respect to implications, I do think a couple of things that are really important to keep in mind. One is that on the more sweeping version of this innocence requirement, what that would mean is that if someone came into federal court and proved that the jury was bribed but wasn't able to prove factual innocence, out of luck. Proved that the jury convicted the defendant because he was black, out of luck. Proved that the key testimony against the prosecution, against the defendant, was perjured and was purchased, out of luck. All those things, out of luck. Even under the more flexible version, which I do think, I said it earlier and in questioning pretty much verified it, that it's not capable of principle application, but it would have the further consequence of being that no one who raises an insanity defense could ever get habeas relief because an insanity defense is, yes, I did the act, but I can't be held legally or morally responsible because I was insane. That was categorically out, even under that. That's quite a dramatic thing to say. Now, what I do think is important here, just so I could close off on this and then if I could, I do have a couple of specific points I want to make. What AEDPA recognizes is that we're striking a balance here. Yes, state interests and comity and finality are really important and they get a great deal of protection under AEDPA, but the fundamental trial rights that ensure that a person doesn't lose his life or his liberty on the basis of a constitutionally unreliable process are important too. That's why habeas has existed in the way it's existed from the 1860s on. It's that balance that I think the innocence requirement fails to respect. Just a couple of points on case specificity, if I could. My friend on the other side repeatedly described trial counsel's approach as a strategic choice. I think I counted like seven or eight times. What we know from the affidavits submitted in the state post-conviction proceedings, both by appellate counsel and by trial counsel, that it wasn't the strategic choice. That is unrebutted testimony that provides a clear and convincing basis to reject any factual finding that this was a strategic choice. A hundred percent, absolutely. This case is like the Biagis case from the circuit, which we've cited in our final pie brief, where the point is the court isn't going to fabricate a strategic justification in the face of evidence showing that there was no strategic justification. That is the case that my friends on the other side are advocating for. Then with respect to the question of . . . Why wasn't Hutt called in the Wright case? Because there was no money to pay him. That's why he wasn't called. The grandfather scraped together enough money just to pay for him to come and testify in this law case, but there was no money to pay him. With respect to the question of what the record shows about whether the claim for AIC funds was rejected or not, I'm just going to cite two pages in the record. First hearing, the key page is 2074. What the judge says then is not . . . I'm just going to get this additional information and then I'll consider your motion. What the judge says is, I'm not going to provide you funds for scientific examination unless you show me a need for it. At this point, he's already got the declaration that meets the threshold showing of AIC. He's got it in his hands. He's saying that's not enough. The state's expert's got to tell me, and he says that later on the page. I can't make the determination until I get somebody telling me one way or another whether he's insane, and that's about what the state expert is going Your time has expired. Thank you. Thank you, Your Honor. That will conclude the arguments. The cases are under submission.